IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT EARL ALEXANDER,

       Plaintiff,

 v.

NATHAN TAPIO and ROMAN KAPLAN,

       Defendants.

OPINION & ORDER

17-cv-861-jdp

---

 Pro se plaintiff Robert Earl Alexander is an inmate at the Dodge Correctional Institution (DCI) who has been diagnosed with throat cancer. He is proceeding on Eighth Amendment deliberate indifference claims against defendants Nathan Tapio (his previous primary care provider) and Roman Kaplan (his current primary care provider), whom he alleges have failed to treat his cancer and given him insufficient pain medication. I held a hearing on July 6, 2018, on Alexander's motions for preliminary injunctive relief regarding his pain medication dosage, Dkt. 22 and Dkt. 36, and Alexander's current treatment options. Alexander appeared pro se; defendants Nathan Tapio and Roman Kaplan appeared by counsel, Samuel Berg and Brandon Flugaur. For reasons stated during the hearing and summarized here, I will order defendants to update the court on the status of Alexander's pain medication dosage in 21 days, and I will hold open Alexander's motions for preliminary injunctive relief until then.

## FINDINGS OF FACT

 Two individuals testified at the hearing: Aaron Wieland, a doctor at the University of Wisconsin who has provided treatment to Alexander, and Roman Kaplan, a defendant and DCI doctor who is in charge of Alexander's day-to-day treatment and medication.

Wieland testified that Alexander underwent a tonsillectomy, one of the most painful surgical procedures for an adult, and that he routinely prescribes high levels of oxycodone to patients after this procedure. Alexander has active cancer in his throat. The amount of pain medication prescribed to a patient, according to Wieland, depends on the patient's level of pain and prior exposure to opioids. Too high a dose of oxycodone can cause constipation, sedation, and a decrease in the drive to breath. The goal is to find the lowest effective level of dosage by "titrating" the dose up or down. Wieland believes that at one point, he may have recommended to DCI that Alexander receive 10–20 milligrams of oxycodone every two hours, and at another point, he may have recommended 5–20 milligrams of oxycodone every three hours. He testified that these dosages are reasonable and not so high as to cause the negative side effects listed above. Alexander indicates that these dosages relieve his pain. Wieland had no reason to believe that Alexander is seeking intoxication, rather than pain relief, through his use of oxycodone.

Kaplan testified that his current prescription for Alexander allows for 20 milligrams of oxycodone every six hours, in combination with long-acting morphine. Kaplan had previously prescribed Alexander 10–20 milligrams of oxycodone every four hours, in combination with a fentanyl patch. (Wieland indicated that this dosage is also reasonable.) But when Alexander removed the fentanyl patch (because, according to Alexander, it didn't relieve his pain and interfered with his breathing), Kaplan reduced the oxycodone dosage because, according to Kaplan, if Alexander doesn't need the fentanyl patch, he must not be in that much pain. Kaplan testified that he suspects that Alexander is seeking intoxication, rather than pain relief, through his use of oxycodone. Kaplan also explained that he believes the fentanyl patch is a better pain-relief option for Alexander because, unlike oxycodone, it is long-acting and can be used without

swallowing, which will be difficult or impossible for Alexander if he undergoes additional cancer treatment.

ANALYSIS

To obtain injunctive relief, Alexander must show that (1) he will suffer irreparable harm before the final resolution of his claim without a preliminary injunction; (2) traditional legal remedies are inadequate; and (3) his claims has some likelihood of success on the merits. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 323–24 (7th Cir. 2015). If Alexander makes this showing, he must further demonstrate that the balance of harms tips in his favor and that the public interest favors the injunctive relief. *Id.*

Here, Alexander's motions hinge on whether his claims have some likelihood of success on the merits. Alexander brings Eighth Amendment claims against Kaplan. To succeed on his claims, he must show that Kaplan is aware of Alexander's serious medical need—severe pain—but is disregarding it. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). As I indicated at the hearing, it would be a stretch to say that Kaplan is disregarding Alexander's pain. Kaplan has prescribed pain medication to Alexander at a dosage level that Wieland says is reasonable. But Alexander has consistently complained that Kaplan's dosage doesn't adequately relieve his pain. Wieland also testified that a reasonable dosage is one that is effective—and according to Alexander's subjective complaints, Kaplan's dosage isn't effective, but Wieland's is. Kaplan discounts Alexander's subjective complaints because he believes that Alexander is lying in an effort to obtain more oxycodone than necessary. Precautions against drug-seeking behavior are reasonable, particularly in the prison context, but they may be misplaced here, where Alexander hasn't asked for any more than the dosage that Wieland recommended. And after all, Alexander

has had a painful surgery and has a potentially terminal cancer, so concerns over drug-seeking behavior may well be completely unwarranted here.

So I will order Kaplan to report to the court in 21 days on the status of Alexander's pain medication dosage. If he continues to discount Alexander's subjective reports of pain, he must explain, in writing, his reasons for doing so. I will reserve ruling on Alexander's preliminary injunction motions until I receive Kaplan's report.

I turn now to Alexander's current treatment options, which are not the subject of any formal motion but were the subject of significant discussion at the hearing. Alexander's health care providers have presented him with two options: (1) chemotherapy and radiation treatment, which will be difficult but may cure Alexander's cancer; or (2) palliative care, which will not cure Alexander's cancer, but will make him comfortable while the cancer eventually takes his life. Alexander has delayed choosing between these two options because he was confused about his prospects. But after hearing from Dr. Wieland, Alexander indicated that he is ready to proceed with chemotherapy and radiation treatment. This is an understandably difficult decision, but at this point, Alexander has all of the information he needs. To proceed with treatment, he will have to sign his health care provider's consent form acknowledging the risks associated with the treatment. He should not delay in doing so. Kaplan will arrange for reassessment and treatment as soon as Alexander indicates that he will consent to treatment. Defendants indicated that they will coordinate with Alexander's brother, Bobby, to ensure that Bobby is able to attend future medical appointments with Alexander and assist Alexander in making decisions about his health care.

Finally, as I mentioned during the hearing, it appears that distrust between Alexander and DCI staff members is interfering with Alexander's medical care. I encourage everyone

involved to take this opportunity to reset. Cooperation, respect, and trust will go a long way in accomplishing the parties' ultimate goal of providing quality health care to Alexander.

One final point. I am still attempting to locate counsel willing to represent Alexander pro bono. This case remains stayed aside from the motions for preliminary injunctive relief. Once counsel is located, the court will schedule a preliminary pretrial conference to set the litigation schedule. Until then, the parties should focus on Alexander's medical care, not litigation.

ORDER

IT IS ORDERED that by July 27, 2018, defendant Roman Kaplan must file a report on the status of plaintiff Robert Earl Alexander's pain medication dosage. If Kaplan continues to discount Alexander's subjective reports of pain, Kaplan must explain his reasons for doing so.

Entered July 9, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge