IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT EARL ALEXANDER,

                      Plaintiff,

v.                                                                                                ORDER

NATHAN TAPIO and ROMAN KAPLAN,                            17-cv-861-jdp

                      Defendants.

---

I held a videoconference hearing in this case on March 25, 2021, to address plaintiff Robert Earl Alexander's allegations that 150 pages of materials, including his response to defendants' motion for summary judgment, were destroyed by prison staff for being contaminated with fecal material, and that prison staff was blocking or delaying his receipt of mail from the court. Alexander didn't participate in the hearing because of purported hearing and speaking limitations. I proceeded to address with defendant's counsel deficiencies in the way Alexander's mail and legal materials had been handled. I issued an order memorializing and expanding on my rulings at that conference. Dkt. 222. I ordered the parties to take several steps to ensure that Alexander would no longer be blocked from communicating with the court and to ensure that Alexander would be able to file his materials opposing defendants' motion for summary judgment.

Defendants have responded to my order and Alexander has filed several motions for a temporary restraining order or preliminary injunctive relief, for an extension of time to file his summary judgment materials, and for the court's assistance in recruiting him counsel. The parties do not appear to have made much progress in resolving the issues discussed in my previous order. I address those issues below.

## A. Incident report

I directed defendants' counsel to submit the incident report detailing the destruction of Alexander's materials, which counsel has now done. That report includes photographs of what defendants say are the first two pages of Alexander's packet of materials, showing that there was indeed some substance on the pages. Dkt. 228-1, at 4–5. I will remind the defendants that prison staff are prohibited from destroying any of Alexander's proposed filings or legal materials. Items posing sanitary or other concerns may be quarantined or confiscated but those actions must be thoroughly documented and promptly reported to the court.

## B. Alexander's ability to communicate

I stated that to prevent future disputes about whether Alexander is equipped to participate in live court proceedings, defendants' counsel should submit a report on Alexander's ability to hear and a plan to provide necessary assistance to him so he can adequately represent himself. Defendants have filed a cursory response: they say that "DCI currently does not have an ADA accommodation request for Mr. Alexander related to his ability to hear or communicate." Dkt. 227, at 2. Nonetheless, they say that for any future videoconferences, "a staff member will be present to assist" Alexander. *Id.* Defendants add that because DCI does not have any live-transcript capabilities, for future hearings they would prefer to transport Alexander to the court and use the court's live-transcript technology.

Defendants' response isn't sufficient. If Alexander really can't hear, there's no reason to think that having a staff member in a video hearing with him is going to enable him to follow what is said. Defendants are agreeing to in-court hearings despite saying that Alexander hasn't made an ADA accommodation request, which is contradicted by the fact that staff communicates with him by whiteboard. And Alexander has said in this and other lawsuits that

2

he needs hearing aids and that he cannot speak. I am prepared to hold in-court hearings where necessary so that we can use live-transcript technology to communicate with Alexander. But Alexander has filed several lawsuits in this court and he may file more; this court needs to know whether every single conference will need to be held at the courthouse because of Alexander's communications limitations.

So I will direct defendants to respond to this order, explaining DOC's position on (1) whether Alexander can hear; (2) whether Alexander can speak; and (3) why Alexander uses a whiteboard at the prison. This response should include a declaration from a medical provider at the prison. They do not need to examine Alexander separately for purposes of their response; given that prison officials have been responsible for Alexander's care for years, they should be able to provide straightforward answers to these questions from Alexander's files or their experiences with him. I'll give Alexander a chance to respond to defendants' report.

## C. Alexander's summary judgment response

In my last order I gave the parties instructions on how to reconstruct the materials Alexander planned on submitting to the court in response to defendants' motion for summary judgment. I took Alexander to be saying that he needed to reconstruct only his evidentiary or other supporting materials because he had stated that he had the original copy of his summary judgment opposition brief. I directed defendants' counsel to oversee production of a copy of the brief for submission to the court, and to provide copies of case law and any internal prison documents that Alexander requested.

Defendants have responded that Alexander has not given them a copy of his brief or submitted a list of documents for them to provide. Alexander has filed a series of motions for a temporary restraining order or preliminary injunctive relief, for an extension of time to file

his summary judgment materials, and for the court's assistance in recruiting him counsel.[1] I will formally deny his motions because I will not be imposing any injunctive relief; I've already given the parties instructions on how to proceed with the case. Also, I haven't yet set a deadline for Alexander for submit his summary judgment opposition, so there is no deadline to extend. And I've explained at length that this court has exhausted its efforts to recruit him counsel. But I will address some of the issues he raises in those filings.

Alexander says that there is still a piece of legal mail that he has not received; a business envelope that Officer Molly Bender refused to give him on March 8. *See* Dkt. 224, at 1. I will give defendants a short time to respond to this allegation, either stating that staff has given Alexander the document or otherwise explaining why he hasn't received it.

In one of his filings, Alexander includes what appears to be a list of some documents he still seeks, although he does not suggest that he has presented the list to defendants' counsel as I directed. Dkt. 226, at 1–2. He asks for more time to obtain these documents. He states that he has written directly to other courts asking for documents associated with cases brought in those courts and to a Wisocnsin state senator asking for documents about administration of the DOC.

I will give Alexander a new deadline to provide defendants' counsel with a list of documents he seeks to use in his summary judgment opposition and to give them his opposition brief. I'll also set a deadline for him to file his summary judgment opposition. But I note that

---

[1] One of Alexander's filings, Dkt. 231, appears to be missing some of its pages. The clerk of court has written to Alexander, asking him to resubmit that document, but Alexander has not yet responded. Alexander should follow through on resubmitting the entire document, but I will not take further action on it unless Alexander raises a genuine impediment to his litigation of this case.

Alexander does not need all of the documents he mentions in his filing to litigate this lawsuit. For instance, he attaches a letter to the United States District Court for the Western District of Louisiana, asking for all of the materials on the district court and appellate dockets for *Frazier v. King*, 873 F.2d 820 (5th Cir. 1989). If Alexander wants to cite that case in his brief, he should do so. He doesn't need evidentiary material or pleadings from that case to make legal arguments about that case.

If Alexander wants copies of DOC administrative regulations or policies, he should ask defendants' counsel directly for them, along with any requests he has for medical records or case law. Alexander should make sure to focus on the facts supporting his claims; his medical records and his own recollection of events are likely the most important sources of material supporting his claims. He should not need to present extensive legal research at this point; the court will apply the appropriate law to the facts, even if Alexander cannot find and provide the law on his own.

Alexander suggests that defendants' counsel is influencing other state agencies to refuse requests for documents he has made to them. But he doesn't provide any evidence supporting this implausible assertion. As I directed, Alexander should ask counsel directly for copies of the documents he seeks.

Alexander asks this court for a docket sheet in one of his previous cases, No. 11-cv-153-wmc, saying that materials he submitted in that case would provide evidence of his hearing disability, which I take him to be saying will be relevant to proving his claims. Defendants' counsel is directed to provide Alexander with a copy of that docket sheet so that he can request particular documents from that docket, if necessary. But I note that any medical records Alexander seeks would likely already be in his medical file at the prison.

Alexander says that he has received conduct reports in conjunction with either the videoconference hearing, the withholding of legal mail, or his failure to help staff find broken pieces of his whiteboard. I would not interfere with the prison's administration of its disciplinary rules unless staff was blocking Alexander's ability to litigate this case. But counsel has already agreed to ensure that Alexander's legal mail gets to him in a timely fashion, and I take Alexander to be saying that he has been provided with a replacement whiteboard, so there isn't a reason for me to grant injunctive relief about these issues. Alexander's tasks now are to give counsel a list of the documents he seeks, and to prepare his summary judgment opposition materials. He should be able to do that without filing more fruitless motions for injunctive relief or for recruitment of counsel.

## ORDER

IT IS ORDERED that:

1. Defendants may have until May 20, 2021, to submit a report on plaintiff Robert Earl Alexander's ability to communicate. Plaintiff may have until May 27, 2021, to respond.

2. Defendants may have until May 13, 2021, to respond to plaintiff's allegation of blocked legal mail on March 8, 2021.

3. Plaintiff's motions for preliminary injunctive relief, for extension of time to file his summary judgment materials, and for recruitment of counsel, Dkt. 224; Dkt. 226; Dkt. 229; Dkt. 230; Dkt. 231, are DENIED.

4. Plaintiff may have until May 13, 2021, to request documents from defendants' counsel.

5. Plaintiff may have until June 14, 2021, to submit his summary judgment opposition materials. Defendants may have until June 28, 2021, to file their reply.

Entered May 6, 2021.

                              BY THE COURT:

                              /s/

                              _____
                              JAMES D. PETERSON
                              District Judge