IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT EARL ALEXANDER,

                       Plaintiff,

    v.

NATHAN TAPIO and ROMAN KAPLAN,

                    Defendants.

OPINION and ORDER

17-cv-861-jdp

---

      Pro se plaintiff Robert Earl Alexander was incarcerated at Waupun Correctional Institution when he was diagnosed with tonsil cancer in 2017. He received his diagnosis from offsite physicians at the University of Wisconsin who directed his cancer treatment. He is now incarcerated at Dodge Correctional Institution, which has a more extensive healthcare facility than Waupun. Alexander contends that medical staff at both prisons failed to adequately address his cancer pain and meet his treatment needs in violation of the Eighth Amendment.

      As the case number suggests, this has been a long and difficult case. The problems were due initially to Alexander's distrust of his healthcare providers and his resistance to treatment. The matter has been further complicated by Alexander's professed deafness and inability to speak. I say "professed" because defendants contend that Alexander exaggerates his communicative problems, but I gave defendants a chance show that Alexander was malingering, and they failed to do so. Dkt. 263. I attempted to recruit counsel for Alexander, but the court was unable to find any lawyer willing to take the case. I attribute the difficult progress of the case to both sides, but we have finally reached the summary judgment stage.

      Defendants' motion for summary judgment, Dkt. 191, is ready for decision. There has never been any doubt that Alexander has been diagnosed with a cancer that would be fatal

without treatment. So, regardless of any litigation difficulty posed by either side, Alexander is entitled to appropriate treatment for his cancer. At every stage of this litigation, including numerous hearings on Alexander's emergency motions, defendants have shown that Alexander has had very good cancer care through the University of Wisconsin. The dispute has focused on the management of his pain.

Alexander often disagreed with the decisions of defendants Nathan Tapio and Roman Kaplan concerning his pain medications, and Tapio and Kaplan sometimes chose not to follow the advice of the UW physicians. But Alexander has not submitted evidence that either Tapio or Kaplan failed to use appropriate medical judgment in treating Alexander's pain or his cancer. For the reasons explained below, I will grant defendants' motion for summary judgment.

I will deny Alexander's many pending motions, Dkts. 288, 292, 297, 305, 306, and 307, because they concern new allegations that do not belong in this lawsuit. As a result of these decisions, this case is closed.


BACKGROUND

**A.  Deficiencies in Alexander's summary judgment submissions**

After defendants moved for summary judgment, Dkt. 191, the court gave Alexander a series of extensions to file his opposition brief. Alexander's summary judgment materials now consist of five submissions: (1) an unsigned opposition brief filed on his final deadline, Dkt. 254; (2) an untimely signed opposition brief that is different from his initial brief, Dkt. 256; (3) an untimely response to defendants' proposed findings of fact, Dkt. 258; (4) an untimely "reply brief" to defendants' summary judgment motion, which the court will construe

as a sur-reply, Dkt. 260; and (5) an untimely, unsigned "reply to defendants' proposed findings of fact," Dkt. 262.

Alexander's submissions are difficult to understand and largely unresponsive to defendants' summary judgment arguments or to the specific events at issue in this case. Alexander has attached a large number of exhibits to his summary judgment filings, including medical records, disciplinary records, incident reports, and letters to and from various prison officials and healthcare providers. But Alexander does not provide citations to this evidence or otherwise explain why these documents support him.

Generally, failure to respond to an argument results in waiver, *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010), and I am not required to scour the record to construct an argument on a party's behalf, *Jeffers v. Comm'r of Internal Revenue*, 992 F.3d 649, 652 (7th Cir. 2021). But because Alexander is a pro se litigant, I view his submissions generously. I have considered all of Alexander's summary judgment materials, including the exhibits to his filings. (I have not considered the hundreds of other documents that Alexander has filed over the course of this litigation, the majority unrelated to any request for relief or to the claims at issue in this lawsuit.) I conclude that Alexander's summary judgment submissions fail to genuinely dispute any of defendants' proposed facts. So where the record does not contradict defendants' proposed facts, I will accept those facts as undisputed.

## B.  Undisputed facts

The few factual disputes are noted; they are immaterial.

Plaintiff Robert Earl Alexander was diagnosed with tonsil cancer in April 2017. At the time, he was incarcerated at Waupun Correctional Institution. Alexander received his cancer care primarily from offsite providers at UW Health, in coordination with medical staff at

Waupun. Defendant nurse practitioner Nathan Tapio was involved in Alexander's care at Waupun.

Following Alexander's diagnosis, a UW physician's assistant prescribed Alexander a combination of oxycodone, ibuprofen, and acetaminophen for pain. A few weeks later, Alexander had an appointment with UW Health Ear, Nose, and Throat specialist Aaron Wieland for a consultation about Alexander's cancer treatment options, which included surgery, radiation, and chemotherapy. At the appointment, Wieland recommended that Alexander be prescribed 20 milligrams of oxycodone every six hours.

On June 1, Alexander met with Tapio to discuss pain management. Tapio followed Wieland's recommendation and prescribed Alexander 20 milligrams of oxycodone every six hours. Two weeks later, Alexander had a consultation with Filip Troicki, a radiation oncologist at a cancer center in Fond Du Lac. Troicki recommended that Alexander have surgery rather than radiation or chemotherapy. Troicki also recommended a PET-CT scan prior to surgery to determine whether Alexander's cancer had spread.

Alexander saw Tapio to discuss his pain again on June 19. Alexander told Tapio that his pain had improved with his medication regimen. Tapio offered Alexander a long-acting opioid pain reliever, which Alexander declined, so Tapio kept Alexander on the same prescription of 20 milligrams of oxycodone every six hours. Tapio also planned to obtain Alexander's PET-CT scan and send Alexander back to Wieland for a final recommendation about whether surgery was warranted.

On July 14, Alexander contacted health services at Waupun about his oxycodone. Alexander's concern in this communication is not entirely clear, because defendants' description of the incident only quotes from Alexander's progress notes, which are vague. The

notes state that Alexander was "concerned [he] was [without] oxycodone." Dkt. 195-1, at 9. The notes then state that Alexander had a "full supply of opioids." *Id*. Tapio followed up with Alexander at a visit three days later. Tapio again recommended a long-acting opioid, which Alexander agreed to. Tapio modified Alexander's prescription to 15 milligrams of controlled-release morphine every 12 hours and 10 milligrams of oxycodone every six hours.

On July 23, Alexander received a conduct report for medication misuse. Dkt. 195-1. The conduct report states that when Alexander was given his oxycodone tablets at medication pass, it appeared that he had mouthed his medication, hiding it in his lower gum, and he refused to comply with orders to show correctional staff the inside of his mouth. Dkt. 195-2.

Tapio discontinued Alexander's oxycodone and morphine prescriptions the next day. Tapio testified that he was concerned that Alexander was attempting to hoard his oxycodone, which was dangerous given Alexander's high opioid dosage and cancer in his airway. Dkt. 194, ¶ 23. Tapio replaced Alexander's oxycodone and morphine with 625 milligrams of liquid acetaminophen three times daily. Tapio also offered Alexander an anti-nausea medication and Ensure, a nutritional supplement.

On August 22, Alexander asked Tapio to be placed back on oxycodone or morphine because he was in pain. Tapio told Alexander that it was unsafe at that time, but that he would revisit the decision after Alexander's PET scan. Alexander saw Tapio about his pain again two days later. The next day, Tapio sent Alexander for a PET scan, which showed no evidence that Alexander's cancer had spread. Tapio also ordered a follow-up appointment with Wieland.

Alexander's follow-up appointment with Wieland was scheduled for September 1, but Alexander missed the visit. Defendants say that Alexander refused to go to the appointment. Alexander says that he didn't know security staff came to his cell to bring him to the visit. He

says that he was facing away from his door when they came, he didn't hear them because he has hearing difficulties, and they didn't try to get his attention.

Tapio reordered the appointment, and it was rescheduled for October 20. Alexander missed that visit too. The parties say that the same thing happened as on September 1. Tapio ordered a competency evaluation to determine whether Alexander was competent to refuse care and instructed health services nurses to witness any further appointment refusals. Tapio also placed a request for Alexander to be transferred to Dodge Correctional Institution's medical center where Alexander could receive closer monitoring.

On November 9, Alexander told Tapio that he wanted to revisit opioids because he was still in pain. Tapio prescribed 5 milligrams of liquid oxycodone twice daily and ordered a follow up appointment with Wieland. At that appointment several weeks later, Wieland recommended that Alexander be put back on 10 to 20 milligrams of oxycodone every four hours. The next day, Tapio increased Alexander's oxycodone to 5 to 10 milligrams every four hours. Tapio also ordered a CT scan and a radiation oncology consultation in accordance with Wieland's recommendations. (Alexander filed this suit on November 13, 2017.)

Alexander's medical transfer request was approved, and he was moved to Dodge on December 1, 2017. Defendant physician Roman Kaplan was responsible for Alexander's care at Dodge. After an initial evaluation, Kaplan continued Alexander's prescription for 5 to 10 milligrams of oxycodone every four hours and ordered a CT scan.

Three days later, Kaplan decreased Alexander's oxycodone prescription to five milligrams every four hours. Over the next few days, Alexander reported body-wide 10-out-of-10 pain to providers. Kaplan declined to increase Alexander's oxycodone. Kaplan says that Alexander generally did not appear to be in pain and that staff had reported to Kaplan that

Alexander was calm, smiling, and able to move around comfortably. Alexander appeared uncomfortable while swallowing his medication on one occasion but ate without visible discomfort after staff left his room.

On December 14, Alexander asked Kaplan to increase his oxycodone. Kaplan told Alexander that it was not warranted because Alexander did not appear to be in pain. The next week, Alexander continued to complain about pain. Kaplan increased Alexander's oxycodone prescription to 10 milligrams every four hours. Kaplan also prescribed 625 milligrams of liquid acetaminophen and 352 milligrams of acetaminophen tablets. Two weeks later, Kaplan decreased Alexander's prescription to 10 milligrams of oxycodone every six hours and prescribed a fentanyl patch.

At some point shortly after Alexander's arrival at Dodge, he reported a lump on his neck to Kaplan that Alexander believed was a new tumor. Kaplan says that he did not believe the lump was a new tumor, that Wieland was aware of the lump and planned evaluate it further during an upcoming CT scan, and that the lump was being addressed as part of Alexander's ongoing cancer care at UW Health. Dkt. 33, ¶ 19.

ANALYSIS

Alexander contends that Tapio and Kaplan violated his rights under the Eighth Amendment by failing to treat his pain and provide him with adequate cancer care. A prison official violates a prisoner's Eighth Amendment right to medical care if the official is deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). A serious medical need is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*,

444 F.3d 579, 584–85 (7th Cir. 2006). Deliberate indifference means that the defendant is aware of an excessive risk to the prisoner's health or safety, but the defendant is disregarding the risk by consciously failing to take reasonable measures to help the prisoner. *See Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997).

In the medical context, deliberate indifference may be inferred when the defendant's conduct is "blatantly inappropriate," *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996), or "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). In other words, "[a] constitutional violation exists only if no minimally competent professional would have so responded under those circumstances." *Johnson v. Dominguez*, 5 F.4th 818, 825 (7th Cir. 2021) (internal quotations omitted)).

The parties do not dispute that Alexander had a serious medical condition. The question is whether Tapio and Kaplan were deliberately indifferent to Alexander's pain and cancer treatment needs. For the reasons explained below, the evidence demonstrates that Tapio and Kaplan exercised appropriate medical judgment in Alexander's pain management and cancer treatment.

## A. Defendant Tapio

I granted Alexander leave to proceed on Eighth Amendment claims against Tapio for giving Alexander a lower oxycodone dosage than Wieland prescribed and for preventing Alexander from attending appointments with Wieland for cancer treatment. Dkt. 17.

The undisputed facts show that Tapio was appropriately responsive to Alexander's cancer pain. From June 1 until July 17, Tapio followed Wieland's recommended oxycodone dosage of 20 milligrams every six hours. After that, Tapio decreased Alexander's oxycodone

dosage to 10 milligrams every six hours and added 15 milligrams of controlled release morphine every 12 hours. But Tapio was not required to follow Wieland's recommendation, and Tapio made the change with Alexander's agreement. Prison medical staff are entitled to deference when choosing an appropriate pain reliever for a prisoner. *Williams v. Ortiz*, 937 F.3d 936, 944 (7th Cir. 2019). This is true even when an outside physician recommends a stronger pain reliever than what prison staff prescribe. *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (prison staff's use of a non-narcotic after an outside physician recommended a narcotic merely demonstrated that the outside doctor would have followed a different treatment course, which is insufficient to show deliberate indifference).

Tapio discontinued Alexander's opioids only after Alexander received a conduct report for misusing his oxycodone. Tapio explained in his declaration that Alexander was receiving a relatively high daily opioid dose and a tumor was compromising his airway, which put him at risk of respiratory depression if he misused his medication. Dkt. 194, ¶ 23. Tapio did not leave Alexander with nothing to treat his pain; he provided an alternative pain reliever (acetaminophen), an anti-nausea medication, and Ensure, and he observed Alexander's pain levels after making the change. *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012) (jail doctor who substituted non-opioid for prior opioid prescription and added medications to alleviate opioid withdrawal symptoms exercised professional judgment).

In sum, Tapio discontinued Alexander's opioid medications over concerns about abuse, and after weighing the risks and benefits of the medication, which does not violate the Eighth Amendment. *Kelly v. Ippel*, No. 21-1273, 2022 WL 500507, at *2 (7th Cir. Feb. 18, 2022). Alexander might have preferred opioids to acetaminophen, a less powerful drug. But prisoners don't have the right to demand the treatment or the medication of their choice. *Walker v.*

*Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019). Even so, Tapio heeded Alexander's complaints: when Alexander reported pain in November, Tapio placed Alexander back on oxycodone and increased the dosage two weeks later. These facts demonstrate that Tapio adjusted Alexander's medications over time and based on Alexander's reports and other indications of Alexander's condition.

Turning to Alexander's appointments with Wieland, Alexander has failed to show that Tapio caused him to miss the medical visits for his cancer care. Alexander contends in his brief that he missed the visits because security staff did not notify him when they arrived at his cell to transport him offsite. But Alexander produces no evidence to support this contention. And even if he did, defendants have shown that Tapio was not personally involved in causing Alexander to miss the visits. *George v. Smith,* 507 F.3d 605, 609–10 (7th Cir. 2007); *Strong v. David,* 297 F.3d 646, 650 (7th Cir. 2002). Tapio testified that he ordered the appointments, but he was not responsible for scheduling them or helping Alexander attend them. That was the job of security staff, none of whom are defendants in this case.

Tapio was otherwise responsive to Alexander's cancer treatment needs. He ordered diagnostic tests, consultations, and follow-up appointments. Tapio ordered a competency evaluation when Alexander missed his appointments and he ordered HSU staff to witness future appointment refusals. Tapio also requested Alexander's transfer to Dodge so that Alexander could receive around-the-clock care. The undisputed facts show that Tapio did not act with deliberate indifference to Alexander's pain or cancer treatment needs. Defendants are entitled to summary judgment on this claim.

**B.  Defendant Kaplan**

I granted Alexander leave to proceed on an Eighth Amendment claim against defendant Kaplan for prescribing a lower oxycodone dosage than Wieland recommended and for failing to treat a new tumor on Alexander's neck. Dkt. 29.

Alexander's summary judgment submissions do not address his claims against Kaplan, and the undisputed facts demonstrate that Kaplan's pain treatment decisions were based on appropriate medical judgment. Kaplan maintained Alexander's oxycodone dosage at 5 to 10 milligrams every four hours when he first arrived at Dodge. Kaplan explained that he decreased Alexander's oxycodone dosage a few days later because Alexander did not appear to be in pain. Alexander complained about severe pain over the next few days. But Kaplan says that he kept Alexander's dosage the same at that time, because Alexander's complaints were not consistent with his behavior. When Alexander continued to complain about pain two weeks later, Kaplan revaluated his decision and responded by increasing Alexander's oxycodone dose in case Alexander had built up a tolerance to the medication.

Kaplan also explained why he did not follow Wieland's recommended oxycodone dosage. In addition to Alexander's lack of visible discomfort, Alexander previously misused oxycodone, and Wieland's recommendation was based on Alexander's statements during a single appointment. In contrast, Kaplan was continuously monitoring Alexander and testified that he was in a better position to evaluate his pain. There is no evidence to suggest that Kaplan's pain-management decisions were not based on appropriate medical judgment that weighed medical observations, Alexander's statements, and the risks and benefits of Alexander's medications. *Kelly*, 2022 WL 500507, at *2.

11

Defendants have also shown that Kaplan did not ignore Alexander's reports of a new tumor. Kaplan testified that he evaluated the lump, did not believe it was new, and that the lump was being addressed as part of Alexander's ongoing care and treatment with Wieland. Dkt. 33, ¶ 19. The undisputed facts do not demonstrate that Kaplan acted with deliberate indifference to Alexander's pain or reports of a new tumor. Defendants are entitled to summary judgment on this claim.

## C. Alexander's other motions

Alexander has filed several motions for temporary restraining orders and hearings. Dkts. 288, 292, 297, 305, 306, and 307. In these motions, Alexander raises a variety of new allegations that are unrelated to his pain management and cancer care. For example, Alexander says that non-defendant prison officials are withholding his mail, interfering with e-filings and legal paperwork, not properly communicating with him, threatening him with conduct reports, refusing to help him to the toilet, and denying him property. He also alleges that non-defendant prison officials are denying him proper medical care for a variety of health conditions. I will deny the motions. I have already told Alexander that he may not use motions for temporary restraining orders to bring new claims against new defendants in this case. And Alexander does not allege that prison officials are interfering with specific litigation tasks related to this lawsuit. If Alexander wishes to bring these new allegations, he must do so in a separate lawsuit.

Finally, Alexander has filed a motion for in camera review of over 150 incident reports and other documents for trial purposes, primarily involving the new allegations he brings in his temporary restraining order requests. Dkt. 307. The motion will be denied.

ORDER

IT IS ORDERED that:

1.  Defendants' motion for summary judgment, Dkt. 191, is GRANTED.

2.  Plaintiff's motions for a hearing and temporary restraining order, Dkts. 288, 292, 297, 305, and 306, are DENIED.

3.  Plaintiff's motion for in camera review of documents, Dkt. 307, is DENIED.

4.  The clerk of court is ordered to enter judgment for defendants and close the case.

Entered March 15, 2022.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

13